UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT VARKONYI,<br><br>      Plaintiff,<br><br>v.<br><br>UNITED LAUNCH ALLIANCE, LLC,<br><br>      Defendant. | Case No. 2:23-cv-00359-SB-MRW<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND TO STRIKE [DKT. NO. 18] |

      Plaintiff Robert Varkonyi brought this Title VII case against his former employer, Defendant United Launch Alliance, LLC.  Plaintiff objected to receiving the COVID-19 vaccine because of his Christian faith.  After Defendant instituted a mandatory COVID-19 vaccination policy, Plaintiff requested a religious exemption, was denied, and was terminated.  Currently before the Court is Defendant's motion to dismiss and to strike the First Amended Complaint (FAC).[1]  Dkt. No. 18.  Since Plaintiff has not alleged that his termination was the result of religious discrimination, the Court grants the motion in part and dismisses his Title VII claim for unlawful termination.  However, since Plaintiff has alleged a prima facie case on his failure to accommodate theory, the Court denies the motion to dismiss Plaintiff's Title VII claim for failure to accommodate.  The Court further denies Defendant's request to strike Plaintiff's punitive damage allegations and prayer for punitive damages.

---

[1] Defendant requests that the Court take judicial notice of three opinions and awards in separate arbitration proceedings.  Dkt. No. 18-3.  Plaintiff does not oppose the request.  Accordingly, the request is GRANTED and the Court takes judicial notice of the three documents.  See *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (courts "may take judicial notice of court filings and other matters of public record").

1

I.

As alleged in the FAC, Plaintiff worked for Defendant from January 2019 to November 15, 2023. Dkt. No. 16 (FAC) ¶ 5. Plaintiff is a Christian who opposes abortion and the medical use of fetal tissue. He believes that the manufacturers of the COVID-19 vaccines use fetal tissue. *Id.* ¶¶ 6, 9. In September 2021, Defendant notified its employees that it would implement a mandatory COVID-19 vaccine policy that required all employees to be vaccinated no later than October 1, 2021. *Id.* ¶ 10. The policy stated that an employee who did not apply for or was denied an exemption and remained unvaccinated by October 29, 2021 would be considered to have voluntarily resigned. *Id.* ¶ 11.

Plaintiff requested a religious exemption from the vaccination policy on September 30, 2021. *Id.* ¶ 13. Defendant denied Plaintiff's request because "an undue hardship to the company would occur due to the costs of weekly testing of the unvaccinated, the volume of requests, and continued outbreaks at [Defendant's] facilities." *Id.* ¶ 15. Defendant was also concerned that it would not be able to conduct business with the federal government and government contractors because of federal vaccination requirements for government contractors. *Id.* The denial letter included the following language: "Employees with an approved accommodation will be required to complete regular COVID-19 testing, in lieu of receiving the vaccine. Testing will be done weekly, at minimum, and customer requirements may require more frequent testing in some situations, which may apply to the employee." *Id.* ¶ 17. Defendant denied all requests for religious exemptions. *Id.* ¶ 20.

Defendant notified all employees that if they were not vaccinated by October 29, 2021, they should not show up for the following workday and would be put on unpaid leave while their resignation was processed. *Id.* ¶ 19. Plaintiff wrote to Defendant's labor relations specialist that he would not be resigning and instead would appeal the denial of his request for a religious accommodation. *Id.* On November 15, 2021, Plaintiff received confirmation that he was no longer employed by Defendant. *Id.* ¶ 24. Plaintiff was willing to submit to testing for COVID-19, wear personal protective equipment while working in-person, and work from home. *Id.* ¶ 27. Plaintiff does not allege that he requested these accommodations from Defendant.

After receiving a notice of the right to sue from the U.S. Equal Employment Opportunity Commission, Plaintiff filed the initial complaint. Dkt. No. 1. Defendant moved to dismiss the complaint, after which Plaintiff filed the FAC.

The FAC brings three claims: (1) a Title VII claim for unlawful termination,[2] (2) a Title VII claim for failure to provide a religious accommodation, and (3) a claim under the Religious Freedom Restoration Act (RFRA). This motion to dismiss followed, which Plaintiff opposes (other than the dismissal of the RFRA claim). Dkt. No. 22.

## II.

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In resolving a Rule 12(b)(6) motion, a court must accept all well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. That is, a pleading must set forth allegations that have "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Courts "'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id*. (quoting *Twombly*, 550 U.S. at 555). Assuming the veracity of well-pleaded factual allegations, a court next must "determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. There is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id*.

## III.

Title VII prohibits discharging an employee because of the employee's religion. 42 U.S.C. § 2000e-2(a)(1). Religion is defined to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business." *Id*. § 2000e(j). Courts recognize two theories of liability

---

[2] This claim is labeled "unlawful termination and retaliation," but Plaintiff does not appear to be raising a claim that Defendant retaliated against him for engaging in a protected activity and the parties do not address a retaliation claim in their briefs. The Court construes Plaintiff's first claim as being an unlawful termination claim.

under this provision, including disparate treatment and failure to accommodate. *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (2004). Plaintiff's first claim, for unlawful termination, falls into the disparate treatment category. Plaintiff's second claim, for failure to provide a religious accommodation, falls into the failure to accommodate category. The Court addresses the claims separately.

### A.

The Court first considers Plaintiff's unlawful termination claim. To prevail on a disparate treatment claim, a plaintiff must prove either direct evidence of discrimination, or (1) he is a member of a protected class, (2) he was qualified for his position, (3) he experienced an adverse employment action, and (4) "similarly situated individuals outside his protected class were treated more favorably." *Chuang v. U. of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1123 (9th Cir. 2000).

Plaintiff does not provide any allegations that support the existence of direct evidence of discrimination and has not alleged that similarly situated non-Christian or nonreligious individuals were treated more favorably than he was. On the contrary, it appears from the FAC that Defendant treated all employees the same by refusing to grant any exemptions to its mandatory COVID-19 vaccination policy. Plaintiff alleges that Defendant denied all religious exemption requests, FAC ¶¶ 13, 15, 20, and he does not allege that Defendant granted any exemptions on medical or other nonreligious grounds. Thus, Plaintiff has failed to state a claim that he was treated differently from other employees who fall outside his protected class. *See, e.g.*, *Wray v. RxC Acquisition Co.*, No. 20-cv-02381-PHX, 2023 WL 2708921, at *2 (D. Ariz. Mar. 30, 2023) (granting summary judgment where Plaintiff had "not identified any other employees outside of his protected class (that is, other employe[e]s who were not black men) who were similarly situated and engaged in materially comparable behavior, and yet were treated differently from him.").

Plaintiff's opposition glosses over these deficiencies and reiterates the FAC's conclusory assumption that Plaintiff's termination was religiously motivated. However, without any allegations to support the conclusion that Defendant exhibited religious bias, the FAC fails to state a claim for unlawful termination on the basis of religion. Rather, the allegations in the FAC support the conclusion that Plaintiff's termination was due to Plaintiff's failure to comply with Defendant's uniformly applied vaccination policy. Accordingly, Plaintiff's first claim for unlawful termination, which relies on a disparate treatment theory, fails.

B.

Plaintiff's second claim alleges that Defendant failed to accommodate Plaintiff's request for a religious exemption. A claim for this type of failure to accommodate requires Plaintiff to show that he had a bona fide religious belief that conflicts with an employment duty, he informed his employer of the belief and conflict, and the employer took an adverse employment action because of his inability to perform his job. Peterson, 358 F.3d at 606. Once a plaintiff establishes a prima facie case, the defendant bears the burden of proving that it initiated good faith efforts to accommodate the religious practices or that it could not reasonably accommodate the employee absent undue hardship. Id.

Plaintiff has alleged sufficient facts to survive dismissal of his accommodation claim. He alleges that his religious beliefs prevented him from receiving a COVID-19 vaccination, that he informed Defendant by requesting a religious exemption from Defendant's vaccination requirement, and that Defendant subsequently terminated him. FAC ¶¶ 6, 9, 13, 15. Defendant argues that these allegations are insufficient because Plaintiff does not allege what accommodation he requested. But this argument ignores Plaintiff's allegation that he requested to be exempt from Defendant's mandatory vaccination policy, id. ¶ 13, which is a form of accommodation request. See Together Employees v. Mass General Brigham Inc., 573 F. Supp. 3d 412, 434 (D. Mass. 2021) ("Here, the accommodation requested by all four named plaintiffs is simply that they not receive the vaccine."); Ruggiero v. Mount Nittany Med. Ctr., 736 Fed. App'x 35, 41 (3d Cir. 2018) (plaintiff made a "good faith request for an accommodation— i.e., exemption from the vaccine requirement . . . ."). Plaintiff's allegations put Defendant on notice of the factual and legal bases for the claim being brought against it. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) (overruled on other grounds but quoted with approval in Twombly, 550 U.S. at 569) (holding that an employment discrimination complaint survives dismissal if it complies with Rule 8 by putting a defendant on notice of the claim being brought against it).

Defendant then argues that granting Plaintiff's exemption request would have imposed an undue hardship, and so it was justified in denying the request and not accommodating Plaintiff's religious objection. An undue hardship is "any act requiring an employer to bear more than a 'de minimis cost' in accommodating an employee's religious beliefs." Trans World Airlines v. Hardison, 432 U.S. 63, 84 n.15 (1977). Defendant identified many potential costs of granting Plaintiff's requested exemption in its letter denying the request and asserts many of these same costs in its motion, including the costs of weekly testing of unvaccinated

employees, continued outbreaks, and the potential loss of government contracts. To support these assertions, Defendant asks the Court to consider the findings of three prior arbitration proceedings involving different employees and an order from the Northern District of Alabama denying a request for injunctive relief enjoining Defendant from enforcing its mandatory vaccine policy, *Creger v. United Launch Alliance LLC*, 571 F. Supp. 3d 1256 (N.D. Ala. 2021).

Defendant seeks a determination that Plaintiff's claim has no merit by largely relying on a factual analysis pulled from cases decided on summary judgment or at trial and on determinations made in other proceedings that lack preclusive effect. The Court is unable to determine at the pleading stage that the requested accommodation would, in fact, have resulted in undue hardship to Defendant. Plaintiff has stated a prima facie case for a failure to accommodate his request for a religious exemption, which is sufficient to survive a pleading challenge. *See Brennan v. Deluxe Corp.*, 361 F. Supp. 3d 494, 510 (D. Md. 2019) (declining to dismiss a Title VII claim based on a failure to accommodate theory where defendant proffered unsubstantiated reasons that accommodation would pose an undue hardship but plaintiff alleged a prima facie case).

IV.

The Court now turns to Defendant's request to strike Plaintiff's punitive damages allegations and prayer for relief. Under Federal Rule of Civil Procedure 12(f), a court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The Ninth Circuit has held that Rule 12(f) "does not authorize a district court to dismiss a claim for damages on the basis it is precluded as a matter of law." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 976 (9th Cir. 2010). Courts in this district have repeatedly applied this holding to deny a motion to strike a plaintiff's demand for punitive damages. *See, e.g.*, *Orozco v. Vivint, Inc.*, No. 20-cv-2584-JGB, 2021 WL 1153032, at *3 (C.D. Cal. Feb. 19, 2021) ("Rule 12(f) does not provide grounds to strike . . . [a] demand for punitive damages at the pleading stage."); *Rozier v. Dep't of Homeland Sec. Protective Serv.*, No. 21-cv-07232-SB, 2022 WL 2199938, at *1 (C.D. Cal. Mar. 7, 2022). Defendant does not address *Whittlestone*, which the Court is bound to follow. Accordingly, the Court denies Defendant's request to strike Plaintiff's punitive damages allegations and prayer.

V.

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Defendant's motion. Dkt. No. 18. Since Plaintiff has failed to state a Title VII claim for unlawful termination, that claim (labeled Plaintiff's first cause of action in the FAC) is dismissed. At the motion hearing, Plaintiff represented that he is able to allege that Defendant granted some requests for nonreligious exemptions. Based on this representation, the claim is dismissed with leave to amend. Fed. R. Civ. P. 15(a). The Court also dismisses the RFRA claim in light of Plaintiff's non-opposition. The Court does not dismiss Plaintiff's Title VII claim for failure to accommodate and does not strike Plaintiff's punitive damages allegations or prayer. Any amended pleading must be filed *no later than May 19, 2023*. Failure to timely file an amended pleading will be deemed a withdrawal of the amendment request.

IT IS SO ORDERED.

Date: May 12, 2023                          _____
                                             Stanley Blumenfeld, Jr.
                                             United States District Judge