1  Katessa Charles (SBN 238568)
   Katessa.Charles@jacksonlewis.com
2  Craig Reese (SBN 238332)
   Craig.Reese@jacksonlewis.com
3  JACKSON LEWIS P.C.
   725 South Figueroa Street, Suite 2500
4  Los Angeles, California 90017-5408
   Telephone:  (213) 689-0404
5  Facsimile:   (213) 689-0430

6  Shannon L. Miller (Admitted *Pro Hac Vice*)
   shannon.miller@jacksonlewis.com
7  JACKSON LEWIS P.C.
   Synovus Center
8  800 Shades Creek Parkway, Suite 870
   Birmingham AL 35209
9  Telephone:  (205) 332-3102
   Facsimile:   (205) 332-3131

10
   Attorneys for Defendant
11 UNITED LAUNCH ALLIANCE, LLC

12 Michael Peffer (SBN 192265)
   michaelpeffer@pji.org
13 PACIFIC JUSTICE INSTITUTE
   2200 N. Grand Avenue
14 Santa Ana, CA  92704
   Telephone:  (714) 796-7150
15
   Attorneys for Plaintiff
16 ROBERT VARKONYI

17          **UNITED STATES DISTRICT COURT**

18          **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 19 ROBERT VARKONYI, an individual, | **CASE NO.:  2:23-cv-00359-SB-MRW** |
| 20                Plaintiff, | Assigned for all Purposes to Hon. Stanley Blumenfeld, Jr., Ctrm. 6C |
| 21          v. | **JOINT SUPPLEMENTAL BRIEF IN RESPONSE TO THE COURT'S MARCH 6, 2024 ORDER [DOC. 77]** |
| 22 UNITED LAUNCH ALLIANCE, LLC, et al, and DOES 1 to 100, inclusive | Pre-trial Conference: March 12, 2024 |
| 23 | Trial: March 25, 2024 |
| 24                Defendant, | |

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Albemarle Paper Co. v. Moody*,
    422 U.S. 405 (1975)........................................................................................................12

*Anderson v. Gen. Dynamics Convair Aerospace Div.*,
    589 F.2d 397 (9th Cir. 1978) ..................................................................................10, 15

*Ansonia Bd. of Educ. v. Philbrook*,
    479 U.S. 60 (1986)........................................................................................................12

*Balint v. Carson City*,
    180 F.3d 1047 ....................................................................................................10, 11, 15

*Blake v. City of Los Angeles*,
    595 F.2d 1367 (9th Cir.1979) .........................................................................................5

*Bolden-Hardge v. Office of California State Controller*,
    63 F.4th 1215 (2023)...............................................................................................5, 6, 9

*Bordeaux v. Lions Gate Ent., Inc.*,
    No. 2:22-CV-04244-SVW-PLA, 2023 WL 8108655 (C.D. Cal. Nov. 21, 2023) ..............................10

*Burns v. S. Pac. Transp. Co.*,
    589 F.2d 403 (9th Cir. 1978) .......................................................................................10

*Connecticut v. Teal*,
    457 U.S. ——, ——, 102 S.Ct. 2525, 73 L.Ed.2d 130 (1982)........................................5, 6

*Contreras v. City of Los Angeles*,
    656 F.2d 1267 (9th Cir.1981) .........................................................................................5

*Cox v. Nw. Reg'l Educ. Serv. Dist.*,
    No. 3:22-cv-01073-HZ, 2024 U.S. Dist. LEXIS 32129 (D. Or. Feb. 23, 2024)...................................8

*D'Cunha v. Northwell Health Sys.*,
    No. 23-476-CV, 2023 WL 7986441 (2d Cir. Nov. 17, 2023)...........................................10

*DeVore v. Univ. of Ky. Bd. of Trustees*,
    No. 5:22-CV-00186-GFVT-EBA, 2023 WL 6150773 (E.D. Ky. Sept. 20, 2023) ............................10

*Dothard v. Rawlinson*,
    433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977).....................................................5

*Dunbar v. Walt Disney Co.*,
    No. CV 22-1075-DMG, 2022 U.S. Dist. LEXIS 200953 (C.D. Cal. Nov. 3, 2022) ......................7, 8

**JOINT SUPPLEMENTAL BRIEF IN RESPONSE
TO THE COURT'S MARCH 6, 2024 ORDER [DOC. 77]**

*Dunbar v. Walt Disney Co.*,
No. CV 22-1075-DMG, 2022 U.S. Dist. LEXIS 236209 (C.D. Cal. July 25, 2022)........................7, 8

*Hebrew v. Tex. Dep't. of Crim. Just.*,
80 F.4th 717 (5th Cir. 2023) ........................................................................10

*Hung Ping Wang v. Hoffman*,
694 F.2d 1146 (9th Cir. 1982) ......................................................................5

*Kluge v. Brownsburg Cmty. Sch. Corp.*,
No. 21-2475, 2023 WL 4842324 (7th Cir. July 28, 2023)..............................10

*Le Beau v. Libbey-Owens-Ford Co.*,
727 F. 2d 141 (7th Cir. 1984) ......................................................................12

*Le Beau v. Libbey-Owens-Ford Co.*,
Civil Action No. 71 C 1902, 1982 U.S. Dist. LEXIS 17863 (N. D. Ill. Mar. 31, 1982) ...................13

*Muhammad v. New York City Transit Auth.*,
52 F. Supp. 3d 468 (E.D.N.Y. 2014) ............................................................6

*Natalya v. Vasilenko*,
No. 3:22-cv-01203-JR, 2023 U.S. Dist. LEXIS 84516 (D. Or. May 14, 2023) ...................8

*Opuku-Boateng v. Cal.*,
95 F.3d 1461 (9th Cir. 1996), cert. denied, 520 U.S. 1228 (1997) ....................11

*Pearson v. Callahan*,
555 U.S. 223 (2009)....................................................................................10

*Rosenfeld v. Southern Pacific Co.* (9th Cir. 1975)
519 F.2d 527 ...............................................................................................12

*TWA v. Hardison*,
432 U.S. 63 (1977).......................................................................... *passim*

*Zimmerman v. PeaceHealth*,
No. 3:22-CV-05960, 2023 WL 7413650 (W.D. Wash. Nov. 9, 2023).........................15, 16

**Federal Statutes**

42 U.S.C.
§§ 2000e–2(a)(1), (b), (c), 2000e–3(a) ...........................................................6
§ 2000e-12(b).....................................................................................9, 12, 13

Code Title 29 pt. 1605 .................................................................................12

78 Stat. 255–257
§§ 703(a)(1), (b), (c), 704(a) ........................................................................6

**JOINT SUPPLEMENTAL BRIEF IN RESPONSE
TO THE COURT'S MARCH 6, 2024 ORDER [DOC. 77]**

**Other Authorities**

29 C.F.R. § 1601.93 ....................................................................................................12

29 C.F.R. § 1604.1 .....................................................................................................12

29 C.F.R. § 1605.2(e) .............................................................................................12, 13

**JOINT SUPPLEMENTAL BRIEF IN RESPONSE
TO THE COURT'S MARCH 6, 2024 ORDER [DOC. 77]**

Plaintiff Robert Varkonyi and defendant United Launch Alliance, LLC ("ULA") individually and by and through their counsel of record, hereby submit the following joint supplemental briefing regarding legal authority addressed in the Court's March 6, 2024 Order [DOC. 77]:

**Question 1**: Whether Varkonyi's disparate impact claim requires him to show (a) a greater impact on religious objectors than non-religious objectors, or (b) a greater impact on religious objectors than people without religious objections.

**Plaintiff's Argument**

Plaintiff respectfully submits the following in response to Question 1. The law supports that Varkonyi must show that ULA's policy requiring the vaccine had a greater impact on religious objectors than people without religious objections. In *Bolden-Hardge v. Office of California State Controller*, 63 F.4th 1215 (2023), Brianna Bolden-Hardge challenged a state employer's refusal to allow a religious addendum to the public-employee loyalty oath set forth in the California Constitution. Ms. Bolden-Hardge refused to take the prescribed loyalty oath, because doing so would violate her sincerely held religious beliefs, to wit [as a Jehovah's Witness, she believed that her faith precluded her from "swearing primary allegiance to any human government" over "the Kingdom of God" or pledging to engage in military activity.]

A disparate impact claim challenges a practice neutral on its face, but having a more adverse impact on minorities than on others. *Dothard v. Rawlinson*, 433 U.S. 321, 329, 97 S.Ct. 2720, 2726–27, 53 L.Ed.2d 786 (1977); *Blake v. City of Los Angeles*, 595 F.2d 1367, 1375 (9th Cir.1979). The plaintiff has the initial burden of proving that the selection process results in a "significantly discriminatory pattern" of promotions. *Connecticut v. Teal*, 457 U.S. ——, ——, *1148 102 S.Ct. 2525, 2531–32, 73 L.Ed.2d 130 (1982); *Contreras v. City of Los Angeles*, 656 F.2d 1267, 1271 (9th Cir.1981). *Hung Ping Wang v. Hoffman*, 694 F.2d 1146, 1147–48 (9th Cir. 1982). It is significant "that Section 703(a)(2) prohibits practices that would deprive or tend to deprive "any individual of employment opportunities." The principal focus of the statute is the

**JOINT SUPPLEMENTAL BRIEF IN RESPONSE
TO THE COURT'S MARCH 6, 2024 ORDER [DOC. 77]**

protection of the individual employee, rather than the protection of the minority group as a whole. Indeed, the entire statute and its legislative history are replete with references to protection for the individual employee. See, e.g., §§ 703(a)(1), (b), (c), 704(a), 78 Stat. 255–257, as amended, 42 U.S.C. §§ 2000e–2(a)(1), (b), (c), 2000e–3(a); 110 Cong.Rec. 7213 (1964) (interpretive memorandum of Sens. Clark and Case) ("discrimination is prohibited as to any individual"); id., at 8921 (remarks of Sen. Williams) ("Every man must be judged according to his ability. In that respect, all men are to have an equal opportunity to be considered for a particular job")." *Connecticut v. Teal*, 457 U.S. 440, 453–54, 102 S. Ct. 2525, 2534, 73 L. Ed. 2d 130 (1982).

In *Muhammad v. New York City Transit Auth*., 52 F. Supp. 3d 468, 486–87 (E.D.N.Y. 2014), "the Transit Authority argued that there is no statistically significant disparity because its policy was applicable to 10,000 employees and only affected four Muslim women, and "four people out of 10,000 bus operators" fails the requirement that "[a] disparate impact claim [have] substantial statistical support." (Def.'s Br. at 21.) The Transit Authority's argument fails because "[t]he basis for a successful disparate impact claim involves a comparison between two groups—those affected and those unaffected by the facially neutral policy." *Tsombanidis*, 352 F.3d at 575."

All of the employees terminated by ULA after seeking a religious accommodation were terminated as a result of their religious belief which forbade obtaining the vaccine. Defendant treated all who had these beliefs the same way. This is the only evidence that matters in this disparate impact claim…that is, ALL persons who had the religious belief forbidding them from taking the vaccine were either forced to resign or terminated. In *Bolden-Hardge*, not every religious person had the belief that they could not swear oaths, not even all Jehovah's Witnesses had the belief, but everyone who had such a belief would be unable to work in certain positions requiring oaths.

Like Bolden-Hardge, Plaintiff herein believed that his religious beliefs precluded him from taking the Covid 19 vaccine. To be sure, not all religious persons have that belief, but everyone who had that belief at ULA could not continue working for ULA.

**JOINT SUPPLEMENTAL BRIEF IN RESPONSE**
**TO THE COURT'S MARCH 6, 2024 ORDER [DOC. 77]**

Thus, ULA's policy had a disparate impact on all believers who shared Mr. Varkonyi's beliefs against the vaccine. In this case, clearly the only meaningful way of viewing the plaintiff's burden is to show

**Defendant's Argument**

Defendant respectfully submits the following in response to Question 1.   In Plaintiff's disparate impact claim, he seeks to establish that "[h]e and other employees with religious requests" for exemption from the COVID vaccine requirement suffered a disparate impact from ULA's vaccination policy. (*See* Doc. 73 at 4, lines 27-28). Multiple courts have recognized that this is a fundamentally improper formulation of a disparate impact claim.  In *Dunbar v. Walt Disney Co.*, No. CV 22-1075-DMG (JCx), 2022 U.S. Dist. LEXIS 236209, at *8 (C.D. Cal. July 25, 2022), the Court considered a disparate impact claim in a COVID vaccine mandate case, in which the plaintiff argued "that his disparate impact claim encompasses all those who share a religious belief against vaccinations." *Id.*  The Court rejected this formulation of the claim, stating that "courts generally treat disparate impact claims as those affecting particular groups or faiths, including articulable sub-groups, but not all those who share a single common belief." *Id.*

> If a plaintiff could narrowly define its class based on its particular religious belief, rather than the broader religious faith or group to which it belongs, then disparate-impact claims would have a nearly limitless reach. This is because any policy impacting a plaintiff's specific religious belief would generally impact 100% of the members of a class defined by that belief, which would virtually always amount to a disproportionate impact as compared to those falling outside the class.

*Id.* (quoting *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 406 F. Supp. 3d 1258, 1306 (M.D. Ala. 2019)). In a follow-up opinion, the court found that the plaintiff's argument "creates a tautology: the 'protected group' he identifies is defined solely by the existence of the alleged discriminatory employment practices." *Dunbar v. Walt Disney Co.*, No. CV 22-1075-DMG (JCx), 2022 U.S. Dist. LEXIS 200953, at *5 (C.D. Cal. Nov. 3, 2022).  If permitted, "such a practice would give a 'nearly limitless reach' to disparate-

impact claims and does not comport with Title VII's requirements." *Id.* at *6. The court thus rejected the plaintiff's argument "that his claim 'aggregates' individuals from all kinds of religious denominations with 'common religious practice[s].'" *Id.* at *5.

Other courts have applied identical reasoning to religious disparate impact claims in vaccine mandate cases. In *Cox*, the court found "that Plaintiffs' 'group' is not protected because it is not comprised of religious employees as a whole, but is instead made up of individuals with specific beliefs regarding the COVID-19 vaccine." *Cox v. Nw. Reg'l Educ. Serv. Dist.*, No. 3:22-cv-01073-HZ, 2024 U.S. Dist. LEXIS 32129, at *38-*39 (D. Or. Feb. 23, 2024). The court adopted *Dunbar*'s reasoning, stating that "parties cannot establish a prima facie disparate impact claim by defining the group as comprised of religious individuals holding a particular belief they attribute to their religion even if other members of that individual's faith or religious group believe otherwise," because doing so "would give disparate impact claims an almost limitless reach." *Id.* at *40-*41. Likewise, in *Natalya v. Vasilenko*, No. 3:22-cv-01203-JR, 2023 U.S. Dist. LEXIS 84516, at *2 (D. Or. May 14, 2023), the court cited *Dunbar* and stated that the plaintiff "will have to identify a specific protected group not simply 'religious' employees who were adversely affected by Defendant's policies."

Thus, the question to be decided for Plaintiff's disparate impact claim is *not* whether "religious objectors" to the vaccine should be compared to medical objectors to the vaccine or those without objection to the vaccine. As succinctly stated in *Dunbar*, *Cox*, and *Natalya*, "religious objectors" to the COVID vaccine is not a protected group under Title VII. Instead, Plaintiff must show a significant disparity between the treatment of an identifiable religious group and those outside such group. Defendant submits that Plaintiff has not offered evidence that any identifiable religious group was disproportionately impacted by ULA's vaccination policy. To allow Plaintiff to define the applicable class as "religious objectors to COVID-19 vaccination" would create a "tautology" and give disparate impact claims "a nearly limitless reach." *Dunbar*, 2022 U.S. Dist. LEXIS 200953, at *5-*6.

**JOINT SUPPLEMENTAL BRIEF IN RESPONSE**
**TO THE COURT'S MARCH 6, 2024 ORDER [DOC. 77]**

Unlike in *Bolden-Hardge*, Plaintiff has not offered evidence that "all of substantially all" members of his religious group oppose COVID-19 vaccination, nor is this an "obvious" fact that does not require the presentation of statistical or other evidence. *See Bolden-Hardge v. Off. of the Cal. State Controller*, 63 F.4th 1215, 1227-28 (9th Cir. 2023). As such, Plaintiff should be required to show a significant disparity between the treatment of an identifiable religious group and those outside such group to prove disparate impact claim at trial.

**Question 2:** Whether 42 U.S.C. § 2000e-12(b) provides a defense to a party relying in good faith on pre-Groff case law against a disparate impact claim or a failure to accommodate claim (when neither claim has an intent element) and, if so, what kind of jury instruction other courts have found appropriate.

**Plaintiff's Argument**

Regarding the argument that an employer detrimentally relied on the *de minimis* standard from prior case law, it is noteworthy that in the Petition for a Writ of Certiorari to the United States Court in *Groff*, pages 21-22, both parties acknowledged that reliance issues are less of a concern in this case.

> This case does not involve property or contract rights, where "considerations favoring stare decisis are at their acme." *Kimble*, 576 U.S. at 457 (citation and internal quotation marks omitted). Overruling where parties have structured complex business arrangements in reliance on a precedent could cause "long-dormant" agreements to "spring back to life." *Ibid*. But that is not the case here. Employment agreements are typically short-term, and employers regularly adapt their human-resources arrangements in response to legal changes and employee needs. Cf. *Janus*, 138 S. Ct. at 2484 ("[I]t would be unconscionable to permit free speech rights to be abridged in perpetuity in order to preserve contract provisions that will expire on their own in a few years' time."). Any reliance interest claimed by employers should be "outweigh[ed]" by the employees' "countervailing interest * * * in having their [Title VII] rights fully protected." *Ibid*.
>
> Lastly, employers "have been on notice for years regarding this Court's misgivings about [*Hardison*]," diminishing any reliance interests they may claim. *Ibid*. Members of this Court, lower-court judges, scholars, and even the United States have all acknowledged that *Hardison's* test is baseless. This persistent criticism

counsels in favor of revisiting that decision. See *Pearson v. Callahan*, 555 U.S. 223, 234-235 (2009).

Thus, the United States Supreme Court has spoken in the *Groff* case, by clarifying law, not making new law. There should be no provision for Defendant to hide behind detrimental reliance.

Moreover, finding that *Groff*, not the prior *de minimis* standard, is strengthened by the fact that the Groff Court remanded the case to the lower court so that it may be decided using the clarified "substantial costs" standard. *Groff*, 600 U.S. at 473. Furthermore, pending religious accommodation cases decided after Groff have applied its clarified standard. See, e.g., *Hebrew v. Tex. Dep't. of Crim. Just.*, 80 F.4th 717, 721 (5th Cir. 2023); *Bordeaux v. Lions Gate Ent., Inc.*, No. 2:22-CV-04244-SVW-PLA, 2023 WL 8108655, at *9 (C.D. Cal. Nov. 21, 2023); *DeVore v. Univ. of Ky. Bd. of Trustees*, No. 5:22-CV-00186-GFVT-EBA, 2023 WL 6150773, at *4 (E.D. Ky. Sept. 20, 2023); *D'Cunha v. Northwell Health Sys.*, No. 23-476-CV, 2023 WL 7986441, at *3 (2d Cir. Nov. 17, 2023); *Kluge v. Brownsburg Cmty. Sch. Corp.*, No. 21-2475, 2023 WL 4842324, at *1 (7th Cir. July 28, 2023) ("In light of the Supreme Court's clarification in Groff . . . our opinion and judgment in this case are vacated and this case is remanded for the district court to apply the clarified standard to the religious accommodation claim in the first instance.").

Finally, shortly after *Hardison* was handed down, the 9th Circuit rejected defenses of undue hardship asserted as a matter of law, *Anderson v. Gen. Dynamics Convair Aerospace Div.*, 589 F.2d 397 (9th Cir. 1978). "Undue hardship means something greater than hardship. Undue hardship cannot be proved by assumptions nor by opinions based on hypothetical facts." *Id*. at 402. See also, *Burns v. S. Pac. Transp. Co.*, 589 F.2d 403 (9th Cir. 1978). This Circuit's 45-year wariness of embracing the *de minimis* approach was fully vindicated in *Groff*.

In *Balint*, this Circuit invoked the *de minimis* standard as it was obligated at the time to do. But the *en banc* panel proceeded to reverse summary judgment for the

**JOINT SUPPLEMENTAL BRIEF IN RESPONSE
TO THE COURT'S MARCH 6, 2024 ORDER [DOC. 77]**

employer in a religious accommodation case because material facts were in dispute as to the employer's proffered undue hardship, as they are here. There, the City made a familiar argument that no accommodation was possible, and it had an undue hardship as a matter of law. With prescience, this Court refused to read *Hardison* so narrowly, and it remanded for further development of the limited record. *Balint*, 180 F.3d at 1054.

*Balint* was hardly an outlier. This Circuit took pains to explain the rigors of undue hardship in decisions such as *Opuku-Boateng v. Cal.*, 95 F.3d 1461 (9th Cir. 1996), cert. denied, 520 U.S. 1228 (1997). This Circuit addressed *Hardison* and declined to read it broadly. *Id.* at 1469-70.

As a threshold matter, the employer must negotiate with the employee in good faith to explore potential accommodations. *Id.* at 1468 (citing *Heller v. Ebb Auto Co.*, 8 F.3d at 1438, 1440 (9th Cir. 1993)). This Circuit described such obligation to negotiate as a "first requirement" and failure to do so as "a violation of the statute." *Opuku-Boateng*, 95 F.3d at 1469.

Far from simply accepting an employer's claim of undue hardship as incontrovertible, this Circuit closely scrutinized the government's proffered rationales and found them unsupported by the evidence, even under a clearly erroneous standard. *Id.* at 1470-71, 1473. Something "far more concrete" is required. *Id.* at 1474. An employer is on firmer ground when it has attempted various methods of accommodation and can then point to any actual hardships. Id. (citing and quoting *Burns*, 589 F.2d at 406).

In short, *Groff* made abundantly clear what this Circuit had long declared Title VII's undue hardship standard requires real, not theoretical, hardships.

**Defendant's Argument**

ULA submits that the lack of an intent element in either a disparate impact or failure to accommodate claim is irrelevant to whether the good faith defense raised by ULA applies. As referenced in its Answer, as well as at summary judgment, ULA relied on published guidance from the Equal Employment Opportunity Commission ("Commission") and well-established case law when it evaluated whether

**JOINT SUPPLEMENTAL BRIEF IN RESPONSE**
**TO THE COURT'S MARCH 6, 2024 ORDER [DOC. 77]**

accommodating Plaintiff's and other employees' religious exemption requests would result in an undue hardship. ULA's reliance on the Commission's guidance falls squarely within the parameters of 42 U.S.C. § 2000e-12(b).

Pursuant to § 2000e-12(b), when, as here, an employer relies in good faith "on any written interpretation or opinion of the Commission," that employer may not be subject to liability for an alleged unlawful employment practice. (*Id.*)[1] This is true even where the agency guidance is later "determined by judicial authority to be invalid or of no legal effect." *Id.* The Commission's guidelines published in the Code of Federal Regulations constitute "[t]he administrative interpretation of the Act by the enforcement agency." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 531 (1975) (quoting *Griggs v. Duke Power Co.*, 401 U.S. 424, 433-34 (1971); *see also Le Beau v. Libbey-Owens-Ford Co.*, 727 F. 2d 141, 148-49 (7th Cir. 1984) (affirming district court's ruling that the employer was entitled to rely on the Commission's guidance found in 29 C.F.R. § 1604.1); 29 C.F.R. § 1601.93 (a "[m]atter published and specifically designated as such in the Federal Register, including the Commission's Guidelines on Affirmative Action" constitutes a "written interpretation or opinion of the Commission" for purposes of 42 U.S.C. § 2000e-12(b).)

Relevant here are the Commission's "Guidelines on Discrimination Because of Religion" which are published Part 1605 of Title 29 of the Code of Federal Register. At the time that ULA engaged in the undue hardship analysis at issue, the Commission interpreted "undue hardship" to require that an employer demonstrate that an accommodation would require "more than a *de minimis* cost." 29 C.F.R. § 1605.2(e). The Commission's interpretation of this term was premised on the United States Supreme Court's opinion in *TWA v. Hardison*, 432 U.S. 63, 84 (1977) ("To require TWA to bear more than a *de minimis* cost in order to give Hardison Saturdays off is an undue hardship."). *See also Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 67 (1986) ("In

---

[1] Note, however, that the Ninth Circuit Court previously concluded that this defense is a bar to liability for back pay or other damages and is not a bar to declaratory relief, injunctive relief, or attorneys' fees. (*Rosenfeld v. Southern Pacific Co.* (9th Cir. 1975) 519 F.2d 527, 529.)

**JOINT SUPPLEMENTAL BRIEF IN RESPONSE**
**TO THE COURT'S MARCH 6, 2024 ORDER [DOC. 77]**

*Hardison*, . . . we determined that an accommodation causes 'undue hardship' whenever that accommodation results in 'more than a *de minimis* cost' to the employer."). The Commission further opined that this undue hardship inquiry must take into account the "identifiable cost in relation to the size and operating cost of the employer, and the number of individuals who will in fact need a particular accommodation." 29 C.F.R., § 1605.2(e).

ULA's reliance on the "*de minimis*" standard set forth in the Code of Federal Regulations precludes liability under 42 U.S.C. § 2000e-12(b). Any other outcome leads to the problematic result of punishing an employer who was relying in good faith on published agency guidance, which itself was premised on precedent set by the United States Supreme Court. *See Le Beau v. Libbey-Owens-Ford Co.*, Civil Action No. 71 C 1902, 1982 U.S. Dist. LEXIS 17863 at *37 (N. D. Ill. Mar. 31, 1982) ("The E.E.O.C. in all fairness should not be heard to condemn defendants for having followed its guidelines; and . . . the individual plaintiffs . . . should not be permitted to reap a financial harvest out of conduct concerning which they never complained until after it was voluntarily discontinued when E.E.O.C. withdrew its approval.").

Whether the *Groff* standard is new or a clarification, nothing changes the fact that EEOC guidance published in the Federal Register set out the *de minimis* standard placing this case squarely within the statute. Notably, there is no argument that ULA did not rely on this standard in good faith, and in fact Plaintiff's argument does not even address the statute.

In response to the Court's request for an exemplar of jury instructions pertaining to the application of § 2000e-12(b), counsel for ULA have conducted a diligent search and were unable to locate instructions on point. ULA therefore proffers the following instruction for the Court's consideration:

> If you decide that Plaintiff has established all of the elements needed for his claims of failure to accommodate, you must then determine if the accommodation Plaintiff requested would have been an undue hardship. ULA bears the burden of proving an undue hardship. At the time it

**JOINT SUPPLEMENTAL BRIEF IN RESPONSE
TO THE COURT'S MARCH 6, 2024 ORDER [DOC. 77]**

evaluated Plaintiff's accommodation request in 2021 and concluded that granting the request would have resulted in an undue hardship, ULA contends that it relied on the definition of undue hardship found in the Equal Employment Opportunity Commission's regulations ("EEOC Guidance"). The EEOC Guidance was based on then-existing United States Supreme Court precedent. You will be asked to decide whether ULA's undue hardship decision was made in good faith, in conformity with, and in reliance on the EEOC Guidance that existed as of the time ULA made this decision. If you find that ULA properly relied in good faith, then your ruling must be for ULA.

**Question 3**: Whether an undue hardship defense to a failure to accommodate claim should be measured by (a) the cost of accommodating the individual plaintiff or (b) the cost of accommodating all employees requesting the same accommodation as plaintiff, and, if the latter, why an employer should not be required to accommodate a subset of requesters whose aggregate costs of accommodation would not amount to an undue hardship.

**Plaintiff's Argument**

As *Groff* explains, the undue hardship analysis is a "fact-specific inquiry" that considers whether "a burden is substantial in the overall context of an employer's business," 600 U.S. at 468, and "takes into account all relevant factors . . . including the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of an employer," *Id*. at 470–71 (internal quotation marks omitted). Each employee must be analyzed individually because each individual worker has a unique context and set of circumstances.  In other words, each employee has their own set of factors.  Option (b) does not satisfy the requirements of Title VII because no two employees are in the *exact* same context and therefore cannot be requesting an identical accommodation.  This is true even for employees with the same job title (as an example, a registered nurse) because each nurse has a certain shift, certain patient population he or she works with, has his or her own health status and propensity for spreading COVID, and more.

1    After *Groff*, should an employer deny an accommodation request, the heightened

2  standard requires evidence that "the burden of granting an accommodation would result

3  in substantial increased costs in relation to the conduct of its particular business." The

4  determination of whether a particular accommodation would have posed an undue

5  hardship is a factual inquiry that "must be determined within the particular factual context

6  of each case." *Balint v. Carson City*, 180 F.3d 1047; accord. *Groff*, 143 S. Ct. 2297

7  (describing the "undue-hardship standard" as a "context-specific standard."). *Id*. "Undue

8  hardship means something greater than hardship. Undue hardship cannot be proved by

9  assumptions nor by opinions based on hypothetical facts." *Anderson*, 589 F.2d 397 (9th

10  Cir. 1978) at 402.

11    Since each ULA employee had a different environment, including the ability to

12  moderate contact with co-employees, the analysis must be of the cost to accommodate

13  each employee, not an aggregate of employees. As stated above, the required fact specific

14  inquiry would make little sense if the analysis was based on all employees requesting an

15  accommodation. Moreover, the cost would likely be different for each employee.

16    In *Zimmerman v. PeaceHealth*, No. 3:22-CV-05960, 2023 WL 7413650, at *9

17  (W.D. Wash. Nov. 9, 2023), the court discussed just such an analysis:

18  As Groff explains, the undue hardship analysis is a "fact-specific inquiry" that
   considers whether "a burden is substantial in the overall context of an employer's
19  business," 600 U.S. at 468, 143 S.Ct. 2279, and "takes into account all relevant
   factors ... including the particular accommodations at issue and their practical
20  impact in light of the nature, size and operating cost of an employer," id. at 470–
   71, 143 S.Ct. 2279 (internal quotation marks omitted). The Court is not persuaded
21  that, as a matter of law, this fact-specific inquiry is satisfied by pointing to the
   scientific consensus that justified vaccine mandates with religious exemptions to
22  prove in every circumstance that any religious accommodation beyond indefinite
   unpaid leave was an undue hardship. *Such an interpretation would render the*
23  *availability of religious accommodations meaningless, as it makes little practical*
   *difference to an employee losing their income whether their employer denies their*
24  *accommodation request and fires them or "grants" their accommodation request*
   *but places them on indefinite unpaid leave.*
25  Moreover, Defendants' argument does not address the allegations of at least some
   Plaintiffs that they could have been accommodated through transfer to non-patient
26  care positions. See, e.g., Dkt. 29-22 ¶ 12; see generally Dkt. 17, 32. Nor does it
   address Plaintiffs' allegation that, in its original press release announcing the
27  mandate, PeaceHealth suggested that other reasonable accommodations were
   possible, stating that exempted individuals would "be subject to regular COVID-19
28  testing, as well as additional masking, potential reassignment to non-patient care

**JOINT SUPPLEMENTAL BRIEF IN RESPONSE**
**TO THE COURT'S MARCH 6, 2024 ORDER [DOC. 77]**

settings, and other safety protocols." Dkt. 29 ¶ 115 (quoting PeaceHealth Requires COVID-19 Vaccination, supra.) Emphasis added.

**Defendant's Argument**

The undue hardship analysis must consider the number of individuals to be accommodated, and the impact of their collective accommodations. As noted in the Summary Judgment briefing in this case, ULA was entitled to rely on EEOC guidance in the Federal Register which explicitly allowed employers to consider the number of employees to be accommodated when evaluating undue hardship. Additionally, the *Groff* decision holds that the undue hardship analysis requires consideration of all relevant factors, including the impact of the accommodations on the business as a whole. Isolating one individual out of over 100 who would need accommodation would not have assessed the impact of those accommodations on the business as a whole.

Notably, ULA was not speculating about the number of possible accommodations, but instead the Company reviewed each religious request and met with each individual to determine if they had a sincerely held belief. It was only after determining that the vast majority passed this first prong that ULA determined they would need to accommodate over one hundred employees for religious reasons alone, in addition to considering over 160 medical accommodation requests. ULA could not simply pick and choose out of these more than one hundred requests because to do so would be to favor one religion over another. If ULA had chosen one religion over another that could have resulted in actual religious discrimination in violation of Title VII. Arbitrator Grossman, in deciding another ULA employee's religious exemption request held that "ULA had no basis for accommodating some employees and refusing to accommodate others. Whatever accommodation may be offered to one employee must be offered to all 109 employees." *Local Lodge 44, International Association of Machinist and Aerospace Workers and United Launch Alliance*, FCMS # 220107-02385, Grievance No. D210019 (M.M. Grossman) at p. 15. Arbitrator Grossman concluded that ULA was "unable to reasonably accommodate" religious beliefs "without an undue hardship on its operations. *Id.* at p. 15.

**JOINT SUPPLEMENTAL BRIEF IN RESPONSE
TO THE COURT'S MARCH 6, 2024 ORDER [DOC. 77]**

Even if the Court were to consider Plaintiff's case in isolation, the undisputed and stipulated facts in this case demonstrate that granting Plaintiff's exemption request would have caused an undue hardship.  Even a single person contracting the deadly virus could have impacted an entire team at the small workforce at Vandenberg where Plaintiff worked, particularly given the fourteen-day quarantine period required at the time ULA made the decision regarding Plaintiff's exemption.  However, the actual impact of a decision to grant Plaintiff's accommodation request could only realistically be evaluated by multiplying those effects by over 100, as the EEOC specifically agrees is a relevant analysis.  Plaintiff's argument does not acknowledge or address this guidance.

Given the long-standing guidance that an employer should consider the global impact of the accommodation request based on the number of impacted employees, and the *Groff* Court's directive to consider the impact of the accommodation on the employer's business as a whole, it would be nonworkable to evaluate individual accommodation requests in isolation in this case. Plaintiff's position unrealistically demands that a decision made in the context of hundreds of requests for accommodation should be judged in hindsight based solely on the potential to accommodate him alone, which ULA was unable to do legally or fairly.


Dated:  March 11, 2024                    JACKSON LEWIS P.C.


                                          By:  s/ Katessa M. Charles
                                          KATESSA M. CHARLES
                                          SHANNON L. MILLER
                                          Attorneys for Defendant
                                          UNITED LAUNCH ALLIANCE, LLC

**JOINT SUPPLEMENTAL BRIEF IN RESPONSE**
**TO THE COURT'S MARCH 6, 2024 ORDER [DOC. 77]**

Dated:  March 11, 2024                    PACIFIC JUSTICE INSTITUTE


                                          By: /s/ Michael Peffer
                                          MICHAEL PEFFER
                                          Attorney for Plaintiff
                                          ROBERT VARKONYI


        Pursuant to Local Rule 5-4.3.4(a)(2)(i) of the United States District Court, Central District of California, I, Shannon L. Miller, attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized filing.

4854-7927-6204, v. 1

**JOINT SUPPLEMENTAL BRIEF IN RESPONSE**
**TO THE COURT'S MARCH 6, 2024 ORDER [DOC. 77]**